UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
**JUAN A. SANTIAGO**,                                        :
                                                             :
                              Plaintiff,                     :
                                                             :   **MEMORANDUM DECISION**
                                                             :   **AND ORDER**
                    – against –                              :
                                                             :   18-CV-06711 (AMD) (RLM)
                                                             :
                                                             :
**1199 SEIU**, *et al.*,                                     :
                                                             :
                              Defendants.                    :
                                                             :
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

Before the Court are the defendants' motions to dismiss the first amended complaint. For

the reasons that follow, I grant the defendants' motions to dismiss, but allow the plaintiff to

amend his complaint.

On November 28, 2018, the *pro se* plaintiff filed this employment discrimination action

against 1199 SEIU United Healthcare Workers East (the Union) and his former employer,

Triboro Center. (ECF No. 1.) Triboro Center answered the complaint (ECF No. 10), and the

Union moved to dismiss (ECF No. 12). I granted the Union's motion to dismiss and gave the

plaintiff leave to amend his complaint. (ECF No. 26.)

On July 19, 2019, the plaintiff filed an amended complaint against 1199 SEIU, Triboro

Center, Elizabeth Morales, Marjorie Lopez, Julio Vives, Nate Goldman, Linda Torres and Milly

Silva.[1] (ECF No. 27.) The amended complaint alleges discrimination claims under the

---

[1] The amended complaint named Elizabeth Morales, Marjorie Lopez, Julio Vives, Nate Goldman, Zenaida Colon, Linda Torres and Milly Silva as defendants, but the content of the amended complaint suggested that the plaintiff may have intended to name additional defendants. Judge Roanne L. Mann directed the plaintiff to file a letter identifying the individuals and/or entities that he intended to name as defendants. (ECF No. 29.) The plaintiff submitted a list that included these individual defendants, as well as Triboro Center and 1199 SEIU, but did not include Zenaida Colon. (ECF No. 30.)

Americans with Disabilities Act, the New York State Human Rights Law, the Rehabilitation Act and Title VII, as well as violations of the "Fair Rights Act," the Occupational Health and Safety Act and the Constitution. The Union, Marjorie Lopez, Milly Silva and Julio Vives (the Union defendants) moved to dismiss the amended complaint on January 17, 2020 (ECF No. 47), as did Linda Torres (ECF No. 50), and Triboro Center, Nate Goldman and Elizabeth Morales (the Triboro defendants) moved to dismiss on January 24, 2020 (ECF No. 55). The plaintiff did not file any opposition to these motions.

## BACKGROUND[2]

The plaintiff, a member of the 1199 SEIU United Healthcare Workers East Union, was employed by Triboro Center for 32 years, until he was terminated in March of 2018. (ECF No. 27 at 11, 23.) He "had a great reputation" during his employment at Triboro Center, and received the nickname "handy man." (*Id.* at 11.) He suffers from alcoholism and severe depression. (*Id.* at 9, 11.) Triboro employees and Union representatives knew about his conditions. (*See id.* at 9, 11 (his alcoholism "was well-known at Triboro").)

On February 28, 2018, Marjorie Lopez, a Union delegate, suspended the plaintiff. (*Id.* at 4, 8.) According to the plaintiff, the suspension was "unjustified." (*Id.* at 8.) Lopez did not follow up or update him about the suspension. (*Id.*)

On March 13, 2018, the plaintiff received two calls at home: one from Lopez, and one from Julio Vives, Vice President of the Union. (*Id.* at 8-10.) Lopez "harass[ed] and bullied" the plaintiff "by saying [he] could not take an early retirement because [he] was too young." (*Id.* at 8-9.) According to the plaintiff, Lopez, who knew about the plaintiff's alcoholism and severe

---

[2] All facts are taken from the amended complaint and its attachments. (ECF No. 27.) For purposes of this motion, I accept as true the factual allegations in the amended complaint and draw all reasonable inferences in the plaintiff's favor. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

depression, instructed Vives to call the plaintiff at home "out of retaliation, to bully and further harass [him] due to the known history of [his] alcoholism and severe depression." (*Id.* at 9.) Lopez "disclosed [the plaintiff's] retirement plans to . . . Vives for [the] sole purpose of [Vives] to impersonate himself as a pension representative." (*Id.*) The call with Vives concerned pension benefits and text messages that the plaintiff's girlfriend had sent to Lopez; Vives told the plaintiff that there would be a "serious problem" if the text messages did not stop. (*Id.* at 9-10.)

The next day, the plaintiff called administrator Nate Goldman and "left several messages . . . regarding Marjorie Lopez's misconduct," and on March 15, sent a "certified letter." (*Id.* at 13.) Goldman did not respond. (*Id.*)

On March 16, 2018, social worker Linda Torres referred the plaintiff to a rehabilitation program, but "purposely" did not give him a physical copy of the referral with her signature. (*Id.* at 5, 10.) According to the plaintiff, Torres was "fully aware" of a plan to terminate him a few days later. (*Id.* at 10.)

Elizabeth Morales from Human Resources terminated the plaintiff on March 19, 2018, "the day [he] entered into rehab," which was "a moment of opportunity."[3] (*Id.* at 3, 11.) Morales knew about his history of alcoholism and severe depression. (*Id.* at 11.) The reason given for his termination was "the pending investigation from the February 28, 2018 suspension." (*Id.* at 12.) Morales "waited 17 days" to issue the termination letter, which said "no show no call for periods 3/19/18 through 3/23/18." (*Id.* at 12-13, 26.) According to the plaintiff, "[w]hen other employees that did not suffer from alcohol depen[den]cy would miss work without prior notice—referred to as no call, no show[—]they were marked as taking a holiday, or a sick day." (*Id.* at 12-13.)

---

[3] The plaintiff also claims that he was terminated on March 26, 2018, and his termination letter is dated April 4, 2018. (*Id.* at 11, 26.)

According to the plaintiff, Morales really terminated him "because [he] reported . . . Lopez's misconduct to her and . . . others on [March 14, 2018]." (*Id.* at 12.) She "knew . . . Vives was the caller the night of [March 13]," and "wanted [the plaintiff] gone before his name and title had surface[d]." (*Id.*) The plaintiff claims that Morales "conspired" with Lopez to terminate him, and that Goldman allowed them to "conspire." (*Id.* at 12, 13.)

The plaintiff called Torres "repeatedly" on March 26, 2018 and spoke with her about his unfair termination and his distress, but Torres "disregarded [his] cries for need for help" and told him to speak with Zenaida Colon. (*Id.* at 10-11.) Torres told the plaintiff's girlfriend that there was nothing she could do. (*Id.* at 11.)

The plaintiff received a grievance document on which he "discovered Julio Vive[s'] name and job title." (*Id.* at 14.) He contacted the Union's Executive Vice President Milly Silva on April 14, 2018. (*Id.*) She "decline[d] to respond to the allegations [he] made repeatedly" against Vives, and did not take "appropriate action." (*Id.* at 14-15.) "No one from the Union ever responded to the allegations made against [Vives] for impersonation and harassment," and Vives' "role in the 3/13/18 incident had a tangible employment action taken against [him] that resulted in termination." (*Id.* at 15.)

The plaintiff filed a grievance, which was closed on April 30, 2018. (*Id.* at 14, 23.) According to the grievance closing letter, the plaintiff "did not show up for any of [his] hearings" and did not contact the Union about his case. (*Id.* at 23.) The plaintiff alleges that Zenaida Colon "switched the places of her and Julio's name on [the] grievance closing letter." (*Id.* at 14.)

## STANDARD OF REVIEW

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The plaintiff is proceeding *pro se*, so I evaluate his complaint by "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), and interpret it to raise the strongest arguments it suggests, especially since it alleges civil rights violations, *see Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191-93 (2d Cir. 2008); *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)).

## DISCUSSION

## I.    ADA, Rehabilitation Act and NYSHRL Discrimination and Retaliation Claims

The ADA prohibits covered entities from discriminating in employment against any qualified individual on the basis of disability.  42 U.S.C. § 12112.  It also prohibits retaliation against an individual who opposes acts or practices prohibited by the ADA.  42 U.S.C. § 12203.  Because claims under the NYSHRL and Rehabilitation Act are governed by the same legal standards as the ADA, I analyze these claims together.[4]  *See Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) ("A claim of disability discrimination under the New York State

---

[4] It is not clear that the Rehabilitation Act, which "governs programs or activities funded or subsidized by federal money," *Thorne v. Bos. Mkt. Corp.*, No. 19-CV-9932, 2020 WL 3504178, at *8 (S.D.N.Y. June 29, 2020), applies, but the defendants do not challenge the plaintiff's Rehabilitation Act claims on this ground.

Human Rights Law . . . is governed by the same legal standards as govern federal ADA claims.")

(quoting *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006)) (internal

quotation marks omitted); *Day v. MTA N.Y.C. Transit Auth.*, No. 17-CV-7270, 2019 WL

1437616, at *4 (S.D.N.Y. Mar. 31, 2019) ("A claim of disability discrimination under the

NYSHRL . . . is governed by the same legal standards as those governing federal ADA and

Rehabilitation Act claims."); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)

("The Rehabilitation Act and NYHRL contain similar provisions against retaliation and are

governed in this respect by the same standards as the ADA.").

### a.  Discrimination

#### i.  *Claims Against Triboro Center*[5]

To establish an ADA claim against an employer, the plaintiff must plausibly allege that:

"(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the

ADA or perceived to be so by [his] employer; (3) [he] was otherwise qualified to perform the

essential functions of the job with or without reasonable accommodation; (4) [he] suffered an

adverse employment action; and (5) the adverse action was imposed because of [his] disability."

*Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015); *Williams v. N.Y.C. Dep't of*

*Educ.*, No. 18-CV-11621, 2020 WL 906386, at *3 (S.D.N.Y. Feb. 25, 2020).

Although the plaintiff's termination qualifies as an adverse employment action, he has

not plausibly alleged that he was terminated because of his disability.  A plaintiff may

"demonstrate circumstances giving rise to an inference of discrimination through evidence of

overt discriminatory conduct or disparate treatment."  *Murtha v. N.Y. State Gaming Comm'n*,

---

[5] Although the amended complaint does not allege any claims against Triboro Center, the plaintiff claims that Triboro Center employees Morales and Goldman discriminated against him.  I read the complaint liberally to assess whether the allegations concerning Morales and Goldman raise discrimination claims against Triboro Center.

No. 17-CV-10040, 2019 WL 4450687, at *11 (S.D.N.Y. Sept. 17, 2019); *see also Fox v. State Univ. of N.Y.*, 686 F. Supp. 2d 225, 230 (E.D.N.Y. 2010).  The plaintiff mentions his alcoholism in some of his allegations.  For example, he alleges that he was terminated on the day he "entered into rehab," which he describes as a "moment of opportunity."  (ECF No. 27 at 11.)  In the termination letter, which the plaintiff attached to the complaint, Morales cited the plaintiff's failure to show up for work or to call as the reason for his termination; the plaintiff alleges that "[w]hen other employees that did not suffer from alcohol depen[den]cy would miss work without prior notice . . . they were marked as taking a holiday, or a sick day."  (*Id.* at 12-13, 26.) These allegations suggest that the defendants treated people with alcohol dependency differently from employees without a similar disability, but the allegations are not sufficiently specific.  *See Murtha*, 2019 WL 4450687, at *12 ("Plaintiff fails to provide any details tending to suggest that [another employee] was 'similarly situated in all material respects' to Plaintiff."); *Fishman v. Office of Court Admin. N.Y. State Courts*, No. 18-CV-282, 2020 WL 1082560, at *8 (S.D.N.Y. Mar. 5, 2020) ("To the extent that Plaintiff does allege disparate treatment compared with non-disabled comparators, all such allegations are entirely generic and conclusory.") (citing the complaint, which alleged that "[o]ther non-disabled fathers and mothers are not jailed by [t]he State for sending gifts to their kids," and that "[o]ther non-disabled litigants in front of other judges do not have to pay for transcripts on their own"); *Majied v. N.Y.C. Dep't of Educ.*, No. 16-CV-5731, 2018 WL 333519, at *3 (S.D.N.Y. Jan. 8, 2018) ("[The plaintiff's] subjective belief that she was treated differently on account of a disability is plainly not enough to state a claim.").

Even if the plaintiff had sufficiently alleged that he was subjected to disparate treatment, he was not terminated because of his alcoholism, by his own account.  The plaintiff claims that

he was really terminated because he reported Lopez's misconduct and Morales "wanted [the plaintiff] gone before [Vives'] name and title had surface[d]."  (ECF No. 27 at 12.)  *See Majied*, 2018 WL 333519, at *3 ("In fact, as the [defendant] points out, [the plaintiff's] own Complaint establishes that she was denied LODI leave not because she was disabled, but because the school's administration determined that the evidence did not support her claim for LODI status.").  Moreover, the plaintiff claims that Morales decided to fire him before the "no-show" dates referenced in the termination letter.  Accordingly, the discrimination claims are dismissed.

### ii.  Claims Against the Union

"Employment discrimination claims against labor organizations are analyzed differently from claims against employers."  *Holcombe v. U.S. Airways Grp., Inc.*, 976 F. Supp. 2d 326, 338 (E.D.N.Y. 2013) (citation and quotation marks omitted).  At the pleading stage, an ADA plaintiff alleging a violation by a union must demonstrate that (a) the union breached its duty of fair representation, and (b) the union's actions were motivated by discriminatory animus.  *Id.* at 338; *see also McIntyre v. Longwood Cent. Sch. Dist.*, 380 F. App'x 44, 49 (2d Cir. 2010) ("[T]o establish a violation of Title VII or the ADEA by the [defendant union], [the plaintiff] would have to show, at a minimum, that the union breached its duty of fair representation and that its actions were motivated by discriminatory animus").

"The standard for stating a claim for breach of a union's duty of fair representation is high."  *Lane v. Wakefield*, No. 16-CV-1817, 2016 WL 5118301, at *2 (S.D.N.Y. Sept. 20, 2016), *aff'd sub nom. Lane v. 1199 SEIU Healthcare Workers Labor Union*, 694 F. App'x 819 (2d Cir. 2017) (citation and quotation marks omitted).  Breach occurs when a union's actions "are arbitrary, discriminatory, or taken in bad faith."  *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 388 (2d Cir. 2015) (citing *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)); *see*

*also Klaper v. Cypress Hills Cemetery et al.*, 10-CV-1811, 2012 WL 959403, at *7 (E.D.N.Y. Mar. 21, 2012). "A union's action is arbitrary 'if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational.'" *Buczakowski v. 1199SEIU*, No. 18-CV-0812, 2019 WL 5697899, at *4 (N.D.N.Y. Nov. 4, 2019), *reconsideration denied*, 2020 WL 2092480 (N.D.N.Y. May 1, 2020) (quoting *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001)). "A union acts with 'bad faith' when it engages in 'fraud, dishonesty, and other intentionally misleading conduct' and has an 'improper intent, purpose, or motive.'" *Id.* (quoting *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709-10 (2d Cir. 2010)).

The plaintiff claims that Union representatives did not contact him about his suspension or his complaints against Lopez and Vives, and that they harassed and bullied him on phone calls. (ECF No. 27 at 8-10, 14-15.) However, the plaintiff acknowledges that the Union sent him documents from the grievance proceedings, (*see id.* at 14-15), and he included with his complaint the letter in which the Union informed him that it closed the grievance matter because the plaintiff did not show up for hearings, (*id.* at 23).

Because the Union did conduct a grievance proceeding, the plaintiff's allegations that the Union failed to respond to his complaints are insufficient to show breach. The duty of fair representation is not breached when a union "fail[s] to pursue a grievance in the manner preferable to the grievant, in the absence of bad faith," *Gaines v. N.Y.C. Transit Auth.*, 528 F. Supp. 2d 135, 150 (E.D.N.Y. 2007) (collecting cases), or when a plaintiff unilaterally ends the union's grievance process, *see Velasquez v. Metro Fuel Oil Corp.*, 12 F. Supp. 3d 387, 416 (E.D.N.Y. 2014) ("Indeed, plaintiff cannot characterize defendant's actions as depriving him of access to the grievance process because he walked out of the meeting.") (citation omitted).

Moreover, although the plaintiff states that Lopez and Vives "harass[ed] and bullied" him on phone calls, the plaintiff does not plausibly allege that these calls—which concerned early retirement, pension benefits and text messages—were a breach of the Union's duty to represent him fairly.

Nor has the plaintiff plausibly alleged that the Union was motivated by discriminatory animus based on disability.  As with his claims against Triboro Center, he has not established an inference of discrimination from direct evidence, or by showing he was treated differently than similarly situated persons.  *See Fox*, 686 F. Supp. 2d at 230.  The plaintiff has not alleged any facts that support his conclusory statements that Union representatives "harass[ed]" and "bullied" him because of his alcoholism and depression.  Rather, the plaintiff acknowledges that his calls with Lopez and Vives concerned early retirement, pension benefits and text messages; he does not claim that Lopez or Vives made any comments about the plaintiff's disabilities.  *See Wallace v. Esper*, No. 18-CV-6525, 2019 WL 4805813, at *7 (S.D.N.Y. Sept. 30, 2019) ("[The plaintiff's] assertions that she experienced [adverse employment actions] in part because of her disability are conclusory.  She does not articulate sufficient facts, such as any discriminatory comments, to suggest that either action occurred as the result of a disability-based animus."); *Majied*, 2018 WL 333519, at *3 ("subjective belief" of different treatment is "not enough").

### iii.   Claims Against the Individual Defendants

"There is no right of recovery against individuals under the ADA, the Rehabilitation Act, or Title VII."  *Adams v. Delta Airlines, Inc.*, No. 16-CV-1986, 2017 WL 9674513, at *8 (E.D.N.Y. Dec. 18, 2017), *report and recommendation adopted as modified*, 2018 WL 1532434 (E.D.N.Y. Mar. 29, 2018); *see also Matthew v. JPMorgan Chase Bank, N.A.*, No. 17-CV-3594, 2020 WL 2523064, at *8 (E.D.N.Y. May 18, 2020) ("ADA discrimination and retaliation claims

cannot be brought against individuals."); *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 154 (E.D.N.Y. 2010) ("Individuals may not be sued in their individual or personal capacity under the ADA or Rehabilitation Act.").  Accordingly, the ADA and Rehabilitation Act claims against the individual defendants are dismissed.

"However, individual defendants may be sued in their individual capacities under the New York State Human Rights Law[,]" either under Section 296(1) as an employer, or under Section 296(6) as an "aider or abettor."  *Adams*, 2017 WL 9674513, at *8; N.Y. Exec. Law § 296.  "An individual defendant is liable as an 'employer' under § 296(1) when that individual has an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others, *i.e.*, the power to hire or fire."  *Sanderson v. Leg Apparel LLC*, No. 19-CV-08423, 2020 WL 3100256, at *10 (S.D.N.Y. June 11, 2020) (citations and quotation marks omitted).  While the plaintiff claims that Morales terminated him, he does not plausibly allege that he was terminated because of his disability, as discussed above.  None of the plaintiff's allegations suggest that any of the other individual defendants qualify as an employer under the statute.

Although a nonemployer could be liable for aiding and abetting an employer's discriminatory action, "the predicate unlawful conduct must first be established" in order "[f]or an aiding and abetting claim to proceed."  *Rivera v. Baiter Sales Co. Inc.*, No. 14-CV-1205, 2014 WL 6784384, at *3 (S.D.N.Y. Dec. 1, 2014); *see also Wilkinson v. New York State*, No. 18-CV-4148, 2019 WL 5423573, at *17 (E.D.N.Y. Oct. 22, 2019) ("[T]he NYSHRL and NYCHRL require that liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor.") (quoting *Jain v. McGraw-Hill Cos.*, 827 F. Supp. 2d 272, 277 (S.D.N.Y. 2011)) (internal quotation marks omitted).  Because the

plaintiff has not plausibly alleged a predicate claim for employment discrimination, he has not stated an aiding and abetting claim.

### b. Retaliation

"To state a claim for ADA retaliation, 'a plaintiff must allege that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against [him]; and (4) a causal connection exists between the alleged adverse action and the protected activity.'" *Robles v. Medisys Health Network*, *Inc.*, No. 19-CV-6651, 2020 WL 3403191, at *11 (E.D.N.Y. June 19, 2020) (quoting *Caskey v. County of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (summary order)) (alterations omitted).

The plaintiff claims that he was terminated in retaliation for his reports of misconduct by Lopez, but has not alleged that he complained about misconduct on the basis of his disability, and thus has not alleged that he engaged in activity protected by the ADA. *See Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 234 (E.D.N.Y. 2015) (the plaintiffs did not allege "protected activity" under the ADA because their complaints were about bullying generally and not bullying on account of disability) (citing *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013)).

## II. Title VII Discrimination

The plaintiff claims that Goldman violated his rights under Title VII because Goldman allowed others to harass the plaintiff and to fire him. This claim is dismissed because the plaintiff does not allege that he falls within a protected class under Title VII, let alone that he was terminated or harassed because of any protected characteristic.[6] *See* 42 U.S.C. § 2000e-2(a)

---

[6] The plaintiff claims that Goldman violated his rights under "vicarious employment liability for unlawful harassment Title VII" by not taking action against Lopez. (ECF No. 27 at 13.) Similarly, he claims that Silva violated his rights "under vicarious employment liability for unlawful harassment" by declining to respond to the plaintiff's allegations about harassment by Vives, (*id.* at 14-15), and that Morales violated

("It shall be an unlawful employment practice for an employer . . . to discharge any individual, or

otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex,

or national origin."); *Forkin v. Local 804 Union (IBT)*, 394 F. Supp. 3d 287, 308 n.15 (E.D.N.Y.

2019) ("To the extent [the plaintiff] relies on his disability to assert a Title VII claim, the claim

fails because Title VII, by its plain language, does not protect against discrimination based on

disability.").

## III.    Constitutional Claims

The plaintiff brings claims under 42 U.S.C. § 1983 and *Bivens* for violations of the First

Amendment.  He claims that some of the defendants violated his First Amendment rights by

taking the following actions: Lopez "aggressively oppose[d] . . . [the plaintiff's] decision to take

an early retirement" (ECF No. 27 at 9); Vives "deprive[d] [the plaintiff] of [his] freedom of

liberty and freedom to defend himself against [Vives and Lopez]" (*id.* at 10); Torres "deprived

[the plaintiff] of the right to council [*sic*]"[7] and did not "refer [him] to see a therapist . . . after

learning of [his] sudden termination" (*id.* at 10-11); and Morales "terminated [the plaintiff]

because [he] reported . . . Lopez's misconduct" (*id.* at 12).

"Because the United States Constitution regulates only the Government, not private

parties, a litigant claiming that his constitutional rights have been violated must first establish

that the challenged conduct constitutes state action."  *Meadows v. United Servs., Inc.*, No. 19-

3732, 2020 WL 3477616, at *2 (2d Cir. June 26, 2020) (quoting *Fabrikant v. French*, 691 F.3d

---

his rights "under the vicarious employment liability" by not taking appropriate action in response to misconduct (*id.* at 12).  To the extent the plaintiff attempted to bring Title VII claims against Silva and Morales—or any other defendant—these claims are also dismissed for the reasons discussed above.

[7] The plaintiff does not seem to claim that he was entitled to legal counsel or that the defendants denied him legal counsel.  In any event, the plaintiff is not a criminal defendant and has not alleged any governmental action.

193, 206 (2d Cir. 2012)) (internal quotation marks omitted).  A plaintiff pressing claims for

violations of constitutional rights under § 1983 or Bivens is therefore required to show

governmental action.  *See id.*; *Bivens v. Six Unknown Named Agents of Fed. Bureau of*

*Narcotics*, 403 U.S. 388, 389 (1971); *Manigaulte v. C.W. Post of Long Island Univ.*, 659 F.

Supp. 2d 367, 379 (E.D.N.Y. 2009) (the plaintiff did not state a viable First Amendment

retaliation claim where he "ha[d] not alleged that defendant, a private university, is a state actor"

or that the plaintiff spoke "as a citizen on a matter of public concern").

     The plaintiff has not alleged any governmental action or that any of the defendants are

government actors.  Accordingly, his constitutional claims are dismissed.

## IV.   OSHA Claim

     The plaintiff claims that Vives violated OSHA by "harassing" and "threatening" him.

(ECF No. 27 at 10.)  This claim is dismissed because "OSHA does not provide a cause of action

for employees to sue their employers."  *Saint Louis v. Cent. Transp.*, No. 17-CV-7223, 2019 WL

4736960, at *2 (E.D.N.Y. Sept. 27, 2019); *see also Donovan v. Occupational Safety & Health*

*Review Comm'n*, 713 F.2d 918, 927 (2d Cir. 1983) ("[I]t is apparent from the detailed statutory

scheme that the public rights created by the Act are to be protected by the Secretary, and that

enforcement of the Act is the sole responsibility of the Secretary.") (internal citations omitted).

## V.   "Fair Work Act" Claim

     The plaintiff alleges that Lopez did not follow up about his suspension and did not let

him know when he could return to work, which he claims violated the "Fair Work Act."  (ECF

No. 27 at 8.)  Although it is not clear what the plaintiff means by the "Fair Work Act," I construe

these allegations liberally to raise a duty of fair representation claim under the National Labor

Relations Act, which requires unions to "serve the interests of all members without hostility or

discrimination . . . , exercise its discretion with complete good faith and honesty, and [] avoid arbitrary conduct." *Fowlkes*, 790 F.3d at 387 (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)) (internal quotation marks omitted); *see also* 29 U.S.C. §§ 151, *et seq.*

The plaintiff's initial complaint raised a breach of fair representation claim, which I dismissed as untimely because he filed it more than six months after he knew or reasonably should have known that a breach had occurred. *See Coureau v. Granfield*, 556 F. App'x 40, 41 (2d Cir. 2014) (summary order). The plaintiff's amended complaint suffers from the same deficiency. The plaintiff was suspended in February of 2018. (ECF No. 27 at 8.) The letter closing the plaintiff's grievance matter is dated April 30, 2018. (*Id.* at 23.) Even if the statute of limitations began to run on April 30, 2018, more than six months passed before the plaintiff filed this action on November 28, 2018.

## CONCLUSION

For the reasons discussed above, I grant the defendants' motions to dismiss. In light of the plaintiff's *pro se* status, and in an abundance of caution, I give the plaintiff leave to amend his complaint within 30 days. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (A Court dismissing a *pro se* complaint should grant leave to amend freely, if "a liberal reading of the complaint gives any indication that a valid claim might be stated.") (citation and quotation marks omitted).

The plaintiff is reminded that his amended complaint must "plead enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The new complaint must be captioned "Second Amended Complaint" and bear the same docket number as this order (18-CV-06711 (AMD) (RLM)). The plaintiff is advised that any amended complaint will completely replace the original complaint and the first amended complaint, so he should not rely on any

allegations in the original complaint or first amended complaint.  The plaintiff is encouraged to contact the Federal Pro Se Legal Assistance Project for limited-scope legal assistance.  All further proceedings will be stayed for 30 days.  If the plaintiff does not amend the complaint within 30 days, judgment dismissing this action will enter.


**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge


Dated: Brooklyn, New York
       July 29, 2020